## Case No. 13,176.

### SONNEBORN v. STEWART et al.

#### [2 Woods, 599.] 1

Circuit Court, M. D. Alabama. May Term, 1875. 2

MALICIOUS PROSECUTION — BANKRUPTCY — PROBABLE CAUSE —EXEMPLARY DAMAGES— ACTUAL MALICE.

1. An action for the malicious prosecution of a proceeding, to have plaintiff declared a bankrupt, is based on the supposed malice of the defendant, and want of probable cause for the prosecution of the bankruptcy proceeding.

2. A want of probable cause is evidence of malice sufficient to sustain the action, and will entitle the plaintiff to recover the actual damage sustained by him.

[Cited in Jerman v. Stewart, 12 Fed. 271.]

3. In order to a recovery of exemplary damages the plaintiff must show actual malice, that is, that the defendants willfully instituted and carried on the bankruptcy proceedings when they knew there was no ground therefor.

4. In order to justify a party in instituting proceedings in bankruptcy, he must be a creditor of the alleged bankrupt. He cannot justify himself by saying he had probable cause to believe himself a creditor, and also probable cause to believe his debtor had committed an act of bankruptcy.

5. Proceedings to put a debtor in bankruptcy should not be resorted to as proceedings in terrorem to collect a debt.

6. Where it had been adjudicated by the highest court of law in the state, that the petitioner had no claim against the party whom he sought to put in bankruptcy, and the bankrupt court had refused to make a decree adjudicating the alleged debtor a bankrupt, in an action for malicious prosecution, the latter was, beyond question, entitled to recover the damages he had sustained by the unlawful attempt to put him in bankruptcy.

7. In such a case, the measure of damages stated.

8. If the defendants had reason to believe that the plaintiff was indebted to them, and had probable cause to believe that he had committed an act of bankruptcy, they cannot be charged with actual malice, and cannot be made to pay exemplary damages.

9. Where a decision of the supreme court of the United States declared a certain act to be an act of bankruptcy, a party reposing on such decision is protected from the charge of actual malice in a proceeding to put his debtor in bankruptcy, based on the ground that he had committed such act, even though such decision were afterwards modified, provided the creditor had probable cause to believe his debtor had committed the act charged.

This was an action at law, [by Meyer Sonneborn against Alexander T. Stewart and others.]

Thomas H. Watts, Samuel F. Rice, and James L. Pugh, for plaintiff.

E. S. Shorter and J. T. Holtzclaw, for defendants.

BRADLEY, Circuit Justice, charged the jury as follows:

This action is brought to recover damages

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
2 [Reversed in 98 U. S. 187.]

sustained by the plaintiff in consequence of bankruptcy proceedings instituted against him by the defendants, on the 15th day of August, 1873, and the charge in the complaint is, that the defendants on that day not having any debt or demand against the plaintiff, or any other reasonable or probable cause therefor, but wrongfully, maliciously, vexatiously, recklessly and oppressively filed their petition against him in the district court of the United States at Montgomery, wherein they falsely alleged that they were creditors of plaintiff to the amount of over $3,000, or other large sum, and among other things, also falsely alleged that plaintiff was insolvent and a bankrupt, and also falsely alleged that he, in view of bankruptcy, had committed an act of bankruptcy in violation of the bankrupt laws of the United States, and prayed that he might be adjudged a bankrupt, he never having committed or been guilty of any act of bankruptcy; and also for a writ of injunction restraining him from managing or controlling his estate; which injunction was issued and served and obeyed; that the defendants in said petition also prayed for a warrant or writ of seizure, to issue from said district court, which writ was also issued, and by virtue thereof the marshal of the district seized and took possession of the entire stock of goods belonging to plaintiff, in the city of Eufaula, on the 16th of August, 1873, and deprived the plaintiff of the possession thereof, and his store was closed and his business was suspended, broken up and destroyed; and his said property was not restored to him until September, 1874, after the proceedings in bankruptcy were dismissed, and that said goods were packed up and greatly injured during the period between the said seizure thereof and restoration to the plaintiff, to at least two-thirds of their value. The petition further states that when said bankruptcy proceedings were commenced, an action was pending in the circuit court of Barbour county, brought by the defendants to recover the claim or debt which they alleged that he owed to them, and on which they founded their said proceedings in bankruptcy, and that this suit was afterwards determined against the defendants, and a judgment rendered in favor of the present plaintiff; thus determining that the defendants had no legal claim or demand against him. The petition further alleges that the bankruptcy proceedings were nevertheless continued, but were finally dismissed by said district court.

The plaintiff claims damages for the injury done to his goods, his business, and his credit as a merchant, and for his loss of time and expenses for lawyers' fees, and charges in defending himself; and also asks for exemplary damages for the willful and malicious proceedings of the defendants.

We instruct the jury that the action is based on the supposed malice of the defendants, and want of probable cause for the prose-

cution of the bankruptcy proceeding complained of. The plaintiff cannot recover damages against the defendants for the mere wrongful prosecution of the proceedings in bankruptcy; but it must also be shown that they had no probable cause therefor. A want of probable cause is evidence of malice sufficient to sustain the action, and will entitle the plaintiff to recover the actual damage which he has sustained. If the plaintiff desires to recover exemplary damages, or smart money (as it is called), he must show that the defendants were guilty of actual malice; in other words, that they willfully instituted and carried on the bankruptcy proceeding, when they knew that there was no ground therefor.

It is necessary, however, in this case, to qualify the foregoing remarks by the further statement that, in order to justify a party in instituting proceedings in bankruptcy, he must be a creditor of the alleged bankrupt. There must be a legal debt or demand as the basis of the petitioner's right to proceed. If the defendants in this case were actual creditors of the plaintiff, they could defend themselves from the charge of maliciously instituting bankruptcy proceedings against the plaintiff, by showing that they had probable cause to believe that he had committed an act of bankruptcy. Though the court of bankruptcy decided against them, and dismissed the proceedings, they could still plead that they had such probable cause for their action. But if they had no legal claim or demand against the plaintiff, then, whether they had such probable cause or not, they had no right to institute the proceedings. They cannot go back and allege that, though they had not a legal debt or claim against him, they thought they had; in other words, that they had probable cause to believe they had such a demand. Unless they had a debt they cannot allege probable cause for proceeding in bankruptcy at all. Their defense cannot stand upon two probable causes, one on the top of the other. They had no right to petition that the plaintiff be declared a bankrupt unless they were his creditors. Their right so to do depended on this fact; and they took on themselves the risk of having such legal demand.

Throwing a man into bankruptcy is a serious proceeding, and should not be lightly resorted to; and ought never to be resorted to, as a proceeding in terrorem to collect a debt. The petition of the defendants may have been sufficient to give the district court jurisdiction of the bankruptcy proceedings, and to validate a decree of bankruptcy, had one been made; because all the creditors of the bankrupt would have been interested in the decree. If such a decree had been made, the plaintiff could not probably have sustained this action. But as no such decree was made, and as the proceedings, on the contrary, were dismissed, and as it has been adjudicated by the circuit court of Barbour county, and affirmed by the state supreme court, that the defendants never had a legal claim against the plaintiff, and therefore had no right to institute proceedings in bankruptcy against him, the plaintiff is entitled to recover in this action the damages he has sustained by those unlawful proceedings. The court, therefore, rules that the defense in this case cannot be sustained by proving that the defendants had probable cause to believe that the plaintiff had committed an act of bankruptcy; but, it being shown by judicial determination that they had no legal debt or claim against the plaintiff, and had, therefore, no right to institute the bankruptcy proceedings, they are liable for the damages sustained by the plaintiff thereby, and the only question for the jury will be the amount of those damages under the circumstances of the case.

If, however, the plaintiff seeks to recover exemplary damages, he can only do so on the ground of actual malice on the part of the defendants. Sharpe v. Hunter, 16 Ala. 765. And on that question the whole conduct and motives of the defendants are open to examination; and if they had probable cause for believing that their claim against him was valid, and that he had committed an act of bankruptcy, they are not chargeable with exemplary damages.

We charge you, therefore, that the plaintiff is entitled to recover his actual damage, or the loss he has actually sustained, at all events, but that you cannot award exemplary damages also against the defendants, unless you believe from the testimony that the defendants were guilty of actual malice.

I. The damages to be allowed the plaintiff, are:

1. The actual damage to his goods, which, as he testifies, were finally sold for only $3,650; and which, when seized, he swears were worth at invoice or cost prices, some $13,000 or $14,000. His clerks corroborate this statement; but two other witnesses, who examined and measured the goods at the time or shortly after they were seized by the marshal, and who estimated their cost value by the same marks, say they amounted to only $8,042. This discrepancy is notable. The evidence is to be weighed by the jury, and the true value of the goods when seized is to be estimated by them. It is to be noted that the latter witnesses, or one of them, think that the goods looked like a lot of auction goods.

2. Damages are to be allowed the plaintiff for the breaking up of his business and the destruction of his credit. His business was estimated by himself at from thirty-five to forty thousand dollars a year, and sometimes more, with a gross profit of thirty-three and a third per cent. From this, however, are to be deducted his expenses and the value of his own time. To this, you are to add the loss of the rent of his store in Texas, if he lost anything therefrom; though of this he has not offered any proof. The value of his

own time is also a fair charge, as he has been obliged to give his attention to the proceedings instituted against him, and has not been able to pursue any business.

3. His expenses for lawyers' fees in following up and setting aside the proceedings in bankruptcy are also a fair item of charge to be allowed in your estimate of the damages sustained by the plaintiff.

It has been claimed that the destruction of the plaintiff's credit is a distinct item of damage; but perhaps this is to be considered as incorporated with his business, and the injury thereto as included in the damage for breaking up said business. The jury will judge whether any separate allowance should be made therefor.

II. On the question of express malice, the whole conduct of the parties and circumstances of the case are to be taken into consideration. If the defendants had reason to believe that he was liable to them for the debt claimed, and if they had probable cause to believe that he had committed an act of bankruptcy, they cannot be charged with actual malice, and cannot be made to pay exemplary damages.

1. As to the reason which the defendants had to believe that they had a legal demand against the complainant: That the defendants had a claim to the amount sued on by them against the firm of E. Leitziger & Co. (whoever that firm was when the debt was contracted) is not disputed. The question was, whether Sonneborn was a member of that firm and therefore liable. That he had been a member of the firm in 1865 and 1866, is conceded. The debt was contracted in the early months of 1867, January, February and March. It is clearly proved that on the 19th of March the defendants were informed that Sonneborn was no longer a member of the firm. The question in dispute between the parties is, whether they had been notified before that time of his retirement. They allege that they had not. The complainant alleges that they had. The importance of this question arises from the principle of law, that if a man is known to be a member of a firm once, he will be deemed to continue a member until notice is given to the contrary. Parties dealing with the firm and giving the credit have a right to consider all the partners as remaining in the firm until they are notified that any of the partners have retired. Now Sonneborn contends that he himself gave the notice; but he only gave notice to one of the selling clerks. It may be questioned whether such notice, if given, would be sufficient. It is contended that notice was given by the clerk of the firm of Leitziger; also that a young gentleman called in their store and said he was from Stewart's, and that notice was given to him. The witnesses on the part of the defendants are very positive that no notice was ever received. The somewhat varying and conflicting evidence

is before you, and it is for you to judge whether any such notice ever was given. If not given, Sonneborn was liable for the debt. It is for you to judge whether the defendants had reason to believe that it had never been given. If they had, then the fact that they failed to recover a judgment against Sonneborn would not be conclusive evidence that they commenced the proceeding in bankruptcy in bad faith and with actual malice.

2. As to probable cause for believing that the complainant had committed an act of bankruptcy: The ground for supposing that the complainant had committed an act of bankruptcy was not without evidence to support it. The judgment recovered against him by his brother on the 12th of June, 1873, in a suit commenced just thirty days previous, a few days after getting a continuance of the defendant's action, without defense, without an effort to get delay, brought by the complainant's own attorney, were circumstances well calculated to induce the belief that the defendant contemplated bankruptcy. The fact that the complainant had issued handbills to advertise the sale of his whole stock of goods was calculated to give intensity to the supposition. Then, the fact that the defendants, before proceeding, consulted their counsel and did not undertake the proceedings in bankruptcy until advised that there was good ground therefor, may also be taken into consideration on this question.

All these circumstances may be taken together, and weighed by the jury in deciding the charge that the defendants were governed by actual malice against the complainant.

The law as it stood at that time, adjudged by the supreme court of the United States, was almost conclusive against the complainant on the question of his liability to be put into bankruptcy. In the case of Buchanan v. Smith, 16 Wall. [83 U. S.] 277, that court held that when an insolvent debtor suffers a judgment to be obtained against him, whereby the judgment creditor obtains a preference, it is an act of bankruptcy. That was what occurred in this case. Sonneborn suffered such a judgment to be recovered against him, large enough to absorb a large part, if not the whole of his goods, if sold on execution. This was considerable proof of insolvency as well as of an act of bankruptcy. The decision referred to has been modified since, it is true, by a decision in a later case; but it was a sufficient declaration of the law for the time being to protect persons from a charge of actual malice in reposing upon its authority.

You have two questions to decide: (1) The actual damages sustained by the complainant. That you will give him a verdict for at all events. (2) Whether the defendants were guilty of actual malice in prosecuting the proceedings in bankruptcy, and

if they were, what exemplary damages should be awarded against them.

Such exemplary damages, if any are allowed, are to be added to the actual damages in the amount of the verdict to be rendered.

[NOTE. Pursuant to the above directions, the jury brought in a verdict for plaintiff. The case was taken by writ of error, to the supreme court, where the judgment of this court was reversed, and a venire de novo ordered. 98 U. S. 187.]

----

SONORA, The (BAILEY v.). See Case No. 746.

SONORA, The (SPARKS v.). See Case No. 13,212.

SONTAG (HYDE v.). See Case No. 6,974.

SOPER (UNITED STATES v.). See Case No. 16,353.

SOPHIA, The (ADAMS v.). See Case No. 65.

SOPHIA, The ANNIE. See Case No. 424.